1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA – FRESNO DIVISION

| | |
|---|---|
| TEXAS GUARANTEED STUDENT LOAN CORP., | CASE NO. 1:10-cv-00335-LJO-SKO |
| Plaintiff, | **FINDINGS AND RECOMMENDATIONS THAT PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT BE GRANTED** |
| v. | |
| DEEPINDER DHINDSA, dba AMERICAN FLEET & AUTO SERVICE CENTER, | (Docket No. 16) |
| Defendants. _____/ | **OBJECTIONS DUE: 20 DAYS** |

## I.  INTRODUCTION

This suit arises out of Plaintiff's collection efforts on a student loan that is in default. Plaintiff is a guarantee agency operating pursuant to the regulations of the Federal Family Education Loan Program ("FFELP").  The FFELP is authorized under Title VI, Part B, of the Higher Education Act of 1964, 20 U.S.C. § 1071, et seq. ("HEA").   Under FFELP, participating lending institutions use their own funds to make loans to qualified borrowers attending eligible post secondary schools. *See generally Pelfrey v. Educ. Credit Mgmt. Corp.*, 71 F. Supp. 2d 1161, 1163 (N.D. Ala. 1999). The loans are guaranteed by state agencies or non-profit organizations, and are subsidized and reinsured by the United States Department of Education.  20 U.S.C. §§ 1071, 1087-1.

The guaranty agency's role under FFELP is to issue guaranties to lenders on qualifying loans, for which it collects insurance premiums paid by the lenders, and passed on to the borrowers. *Id.* Guaranty agencies are required to insure the entire amount of the loan, and are in turn reinsured by the Department of Education ("DOE"). *Id.* If the guaranty agencies act in accordance with the regulations promulgated under the HEA and FFELP, DOE will reimburse the agency when the agency is required to pay default claims – i.e., where a borrower has failed to pay its student-loan lender. Under FFELP and HEA, the guaranty agencies have a continuing obligation to pursue collection activities even after the DOE has reimbursed the agencies for default claims that the agency has paid to lenders. 34 C.F.R. § 682.410(b)(6).

As a mechanism for pursuing collection activity, guaranty agencies have authority to administratively issue orders to employers of defaulted borrowers requiring them to withhold up to fifteen percent (15%) of the disposable income of these borrowers. *See* 20 U.S.C. § 1095a. Section 1095a sets forth the procedures for providing defaulting student borrowers with due process, including prior notice of the agency's intent to withhold and an opportunity to be heard at a hearing if requested by the borrower. After this process, the guaranty agency is allowed to issue a Wage Withholding Order.[1] Section 1095a also grants guaranty agencies the right to institute suit against those employers who do not deduct and pay pursuant to the Wage Withholding Order. *Id.*; 34 C.F.R. § 682.410(b)(9)(i)(F).

## II.   PROCEDURAL BACKGROUND

### A.   Defendant's Failure to Respond to the Wage Withholding Order and the Complaint

Plaintiff asserts that it is a guaranty agency under FFELP, and it is attempting to collect on a student loan that is in default. (Doc. 1, ¶¶ 8, 9.) Plaintiff contends that it has followed the administrative steps required to collect on the student loan. (*Id.*, ¶¶ 10-15.) Specifically, Plaintiff alleges that it served the defaulting borrower, Joel J. O'Leary ("O'Leary") with a "Notice Prior to Administrative Wage Garnishment" on December 17, 2008. (*Id.*, ¶ 10.) On February 6, 2009,

---

[1] Pursuant to 20 U.S.C. § 1095a(a)(6), the guaranty agency may garnish the wages of a defaulted borrower through an administrative mechanism called a Wage Withholding Order that is served upon the defaulted borrower's employer. The Wage Withholding Order is an administrative order requiring the employer to deduct a certain percentage of its employee's disposable wages.

2

Plaintiff served O'Leary's employer, Deepinder Dhindsa, doing business as American Fleet & Auto Service Center ("Dhindsa"), with an "Order of Withholdings From Earnings" requiring Dhindsa to withhold fifteen percent (15%) of O'Leary's disposable pay. (*Id.*, ¶ 11.) Plaintiff sent Dhindsa a "Second Notice of Order of Withholding From Earnings" on March 26, 2009. (*Id.*, ¶ 12.) Plaintiff also sent Dhindsa demand letters seeking compliance with the Withholding Orders on June 25, 2009, July 20, 2009, and October 2, 2009. (*Id.*, ¶ 13.) Following Dhindsa's refusal to comply with the "Order of Withholdings From Earnings," Plaintiff filed the instant action on February 24, 2010, seeking enforcement of the Withholding Order. Dhindsa was served with the suit on March 5, 2010 (Doc. 6), but failed to respond to the complaint.

**B.     Defendant's Failure to Respond to Discovery, the Court's Order Compelling Responses, and the Court's Order to Show Cause**

On April 15, 2010, Plaintiff requested that default be entered against Dhindsa (Doc. 8); the Clerk entered Dhindsa's default on April 21, 2010 (Doc. 11). On April 29, 2010, Plaintiff filed a Motion for Discovery to serve discovery prior to the Rule 26(f) conference that had not taken place because of Dhindsa's default. Plaintiff argued that discovery was needed to ascertain how much money should have been withheld from O'Leary's pay pursuant to the Wage Withholding Order. (Doc. 12; *see* Doc. 16, 7:22-23 ("[Plaintiff] is unable to determine the amount of [O'Leary's] disposable pay and calculate the amount that should have been withheld from [O'Leary's] wages."). The Court granted Plaintiff's request, and it proceeded to serve discovery on Dhindsa, but Dhindsa did not respond to Plaintiff's discovery requests. (Doc. 16, Declaration of Scott A. Schiff ("Schiff Decl.") ¶ 6.)

On August 25, 2010, Plaintiff filed a Motion for Default Judgment, or, in the alternative, a "Motion to Compel Responses to [Plaintiff's] Requests for Production of Documents." (Doc. 16.) In its Motion for Default Judgment, Plaintiff requested that judgment be entered and awarded as follows: (1) $6,628.47, the full amount of O'Leary's student loan debt, (2) interest in the amount of $0.37 per day from August 13, 2010, (3) attorneys' fees in the amount of $3,720, and (4) costs of suit in the amount of $350.

On October 7, 2010, the Court granted Plaintiff's alternative "Motion to Compel Responses to [Plaintiff's] Requests for Production of Documents." (Doc. 18.)  In doing so, the Court noted that, while the outstanding balance of O'Leary's student loan may be easily provable, Plaintiff could not precisely quantify the amount of its damages with regard to the Wage Withholding Order it issued to Dhindsa because it had no information regarding the amount of wages paid to O'Leary by Dhindsa. (Doc. 16, 7:22-23.)

As Dhindsa had not responded to Plaintiff's discovery requests seeking this information, the Court granted Plaintiff's Motion to Compel responses to its Requests for Production of Documents and ordered that Plaintiff personally serve the Court's order granting the motion to compel on Dhindsa along with a copy of the Requests for Production of Documents.  (Doc. 18.)  Plaintiff's Motion to Compel also sought sanctions in the amount of the attorneys' fees and costs of bringing the motion to compel.  In its order granting the motion to compel, the Court ordered Dhindsa to show cause why he should not be required to pay $1,377.50 as an award of costs and fees associated with the motion.  Despite the Court's order, Defendant Dhindsa neither responded to Plaintiff's discovery requests nor responded to the Court's order to show cause regarding sanctions. (*See* Doc. 21.)

**C.    Supplemental Information Provided to the Court**

On November 17, 2010, a hearing was held regarding Plaintiff's motion for default judgment against Dhindsa.  (Doc. 22.)  As additional evidence of damages, Plaintiff agreed to provide supplemental declarations addressing the following:  (1) the nature of conversations Plaintiff's counsel has had with Defendant regarding settlement and payment, (2) whether Defendant has made any payments in compliance with the Wage Withholding Order and whether the total amount due is properly offset by any amount Defendant has paid, (3) the dates when Defendant ceased to comply with the Wage Withholding Order, (4) updated billing records from Plaintiff's counsel, and (5) whether Plaintiff has any actions pending against Mr. O'Leary or whether Plaintiff has obtained a judgment against Mr. O'Leary for payment of the student loan at issue.

On December 1, 2010, Plaintiff filed a supplemental declaration of Kaye Worrell (Doc. 23) and attorney Scott A. Schiff (Doc. 24). Ms. Worrell states that the total amount of the loan balance, as of November 30, 2010, is $6,674.42 and that Plaintiff has incurred costs of $563.60 and attorneys'

4

fees in the amount of $4,830.00. (Doc. 23, ¶¶ 8, 11.) According to Ms. Worrell, Dhindsa has never made a payment under the Wage Withholding Order, and no suit has been instituted or judgment rendered in favor of Plaintiff against O'Leary. (Doc. 23, ¶¶ 7, 10.) Ms. Worrell also estimated that the cost of personally serving Defendant with the supplemental declarations would be approximately $98.00. (Doc. 23, ¶ 11.) Mr. Schiff's declaration provides updated billing records confirming that the amount expended in attorneys' fees and costs in this matter totals $5,393.60, plus an estimated $98.00 for the cost of personal service of the December 1, 2010, declarations. (Doc. 24.) These declarations were personally served on Dhindsa on December 3, 2010, and the fee for the service was $93.90. (Doc. 27.) Thus, the total fees and costs of the litigation amount to $5,487.50 ($4,830.00 + $563.60 + 93.90). Plaintiff seeks a default judgment in the total amount of the loan ($6,674.42) as well as collection costs and fees associated with this litigation ($5,487.50). The total amount that Plaintiff seeks as a default judgment is $12,161.92.

**D.    December 20, 2010, Order to Show Cause**

On December 20, 2010, the Court issued an order requiring Dhindsa to show cause why a judgment should not be issued, pursuant to Federal Rules of Civil Procedure 55 and 37, in favor of Plaintiff in the amount of $12,161.92, due to Dhindsa's refusal to comply with the Court's order to furnish Plaintiff with information regarding O'Leary's terms of employment and wages pursuant to discovery requests. The Court explained that, pursuant to Federal Rule of Civil Procedure 55 and 37, it was inclined to recommend that Plaintiff be awarded a default judgment in the amount of $12,161.92. Although given another opportunity to participate in the proceedings, Dhindsa failed to respond to the Court's December 20, 2010, Order to Show Cause.

**III.   DISCUSSION**

**A.    Legal Standard**

Federal Rule of Civil Procedure 55(b) permits a court-ordered default judgment following the entry of default by the clerk of the court under Rule 55(a). It is within the sole discretion of the court as to whether default judgment should be entered. *See Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). A defendant's default by itself does not entitle a plaintiff to a court-ordered judgment. *See id.* Instead, the Ninth Circuit has determined that a court should consider seven

discretionary factors, often referred to as the "Eitel factors," before rendering a decision on default judgment. *See Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986). The *Eitel* factors include the following: (1) the possibility of prejudice to the plaintiff, (2) the merits of the plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action, (5) the possibility of a dispute concerning material facts, (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. *See id.*

A plaintiff is required to prove all damages sought in the complaint. *See Televideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1992). In addition, any relief sought may not be different in kind from, or exceed in amount, what is demanded in the complaint. Fed. R. Civ. P. 54(c). If the facts necessary to determine the damages are not contained in the complaint, or are legally insufficient, they will not be established by default. *See Cripps v. Life Ins. Co. of N. Am.*, 980 F.2d 1261, 1267 (9th Cir. 1992).

Finally, once the court clerk enters a default, the well-pleaded factual allegations of the complaint are taken as true, except for those allegations relating to damages. *See Televideo Sys., Inc.*, 826 F.2d at 917.

**B.     Analysis**

    **1.     The *Eitel* Factors Weigh in Favor of Default Judgment**

        **a.     Prejudice to Plaintiff if Default Judgment Not Granted**

If default judgment is not entered, Plaintiff will effectively be denied a remedy until such time as Dhindsa participates and makes an appearance in the litigation – which may never occur. Denying Plaintiff a means of recourse is, by itself, sufficient to meet the burden imposed by this factor. *See, e.g., Philip Morris, USA, Inc. v. Castworld Prods., Inc.*, 219 F.R.D. 494, 499 (C.D. Cal. 2003).

        **b.     Merits of Plaintiff's Substantive Claims and the Sufficiency of the Complaint**

The next relevant *Eitel* factors include an evaluation of the merits of the substantive claims pled in the complaint as well as the general sufficiency of the complaint. In weighing these factors,

courts evaluate whether the complaint is sufficient to state a claim that supports the relief sought. *See Danning v.Lavine*, 572 F.2d 1386, 1388 (9th Cir. 1978); *see also DIRECTV, Inc. v. Huynh*, 503 F.3d 847, 854 (9th Cir. 2007) ("[A] defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law.") (internal quotation marks omitted).

Section 1095a(a)(6) permits guaranty agencies to file suit against employers of borrowers who fail to comply with Wage Withholding Orders. Plaintiff alleges that Dhindsa is O'Leary's employer, that O'Leary has a student loan that is in default, and Plaintiff is entitled to garnish O'Leary's wages. (Doc. 1, ¶¶ 16-18.) Further, Plaintiff asserts that, despite properly issuing Wage Withholding Orders to Dhindsa, Dhindsa has failed to comply and pay the amounts due. (*Id.*) Plaintiff has adequately set forth the facts supporting its cause of action under Section 1095a against Dhindsa. Therefore, the Court finds that Plaintiff's claims appear to have substantive merit, and the complaint is sufficiently well-pled such that these factors support the entry of default judgment.

### c.    Sum of Money at Stake

The fourth *Eitel* factor, the sum of money at stake, weighs in favor of default judgment. Default judgment is disfavored when a large amount of money is involved or is unreasonable in light of the defendant's actions. *See Truong Giang Corp. v. Twinstar Tea Corp.*, No. C 06-03594 JSW, 2007 WL 1545173, at *12 (N.D. Cal. May 29, 2007). Here, Plaintiff is seeking a default judgment in the amount of $12,161.92, which includes attorneys' fees and costs. This is not a particularly large sum of money, nor does it seem unreasonable in light of Dhindsa's actions in failing to comply with the Wage Withholding Orders.

### d.    Dispute Concerning Material Facts

With regard to this factor, no genuine issues of material fact are likely to exist because the allegations in the complaint are taken as true, *Televideo Sys.*, 826 F.2d at 917-18, and Dhindsa has submitted nothing to contradict the well-pled allegations in the complaint. Accordingly, this favor favors entry of default judgment.

### e.    Default Due to Excusable Neglect

There is no evidence that Dhindsa's failure to participate in the litigation is due to excusable neglect. Thus, this factor weighs in favor of granting default judgment.

### f.      Strong Policy Favoring Decision on the Merits

This factor inherently weighs strongly against awarding default judgment in every case.  In the aggregate, however, this factor is outweighed in consideration of the other applicable factors that weigh in favor of granting default judgment.

### 2.      Proof of Damages

While analysis of the *Eitel* factors supports a default judgment, the Court also considers the proof of the damages sought by Plaintiff.

### a.      Damages Under Wage Withholding Order

Pursuant to 20 U.S.C. § 1095a, Plaintiff may administratively garnish up to 15% of the disposable earnings of a defaulted student loan borrower.  Wage garnishment is commenced by issuing a Withholding Order to the borrower's employer.  Here, Plaintiff issued a Withholding Order on February 6, 2009, directing Dhindsa to deduct 15% from O'Leary's wages per pay period.  (Doc. 1, Exhibit B).

Plaintiff requests entry of judgment against Dhindsa in the amount of $6,674.42  plus $0.37 per day from November 30, 2010, through the date of entry of judgment.  Plaintiff explains that $6,674.42 represents the total amount O'Leary owes on his defaulted student loan, rather than the amount that Dhindsa necessarily should have garnished during the relevant time period.  Plaintiff requests damages in this amount claiming it cannot determine the amount of O'Leary's disposable pay to calculate the amount that should have been withheld from O'Leary's wages.  Plaintiff claims the information needed to determine O'Leary's gross pay and the amounts to be withheld is only known to Dhindsa and O'Leary.  Plaintiff's efforts to propound discovery have been fruitless, and the Court's order compelling Dhindsa to produce documents responsive to the discovery requests has been ignored.  In light of Dhindsa's failure to participate in the litigation, respond to Plaintiff's discovery requests, or respond to two court orders, Plaintiff  requests that the Court enter judgment for the entire amount of O'Leary's student loan.

The Court notes that Dhindsa has failed to do the following: (1) make an appearance in this action, (2) comply with the Court's October 7, 2010, Order Compelling the Production of Documents, (3) respond to the Court's October 7, 2010, Order to Show Cause regarding the

imposition of sanctions for failure to respond to Plaintiff's discovery request, and (4) respond to the Court's December 20, 2010, Order to Show Cause regarding the imposition of sanctions and default judgment.   By failing to respond to Plaintiff's discovery requests, the amount of wages paid by Dhindsa to O'Leary is unknown, and, therefore, the amount of wages subject to the Wage Withholding Order is not quantifiable.   As long as O'Leary's continues to be employed by Dhindsa, Plaintiff has the right to continue to garnish O'Leary's wages until the total loan amount is paid in full.

On the one hand, the statute specifically instructs that an employer "shall not be required to vary the normal pay and disbursement cycles in order to comply" with the statute.   20 U.S.C. § 1095a(a)(6).   As noted, *supra*, O'Leary's disposable wages subject to the Wage Withholding Order may be significantly less than the total amount of O'Leary's loan.   On the other hand, if a guaranty agency's difficulty in establishing the amount of its damages under a Wage Withholding Order is caused by an employer's (1) intentionally withholding information regarding an employee's wages, (2) refusing to garnish wages pursuant to a Wage Withholding Order, (3) failing to participate in litigation regarding the Wage Withholding Order, and (4) ignoring multiple court orders compelling the production of documents and orders to show cause for failing to produce documents, the private right of action of a guaranty agency against a borrower's employer provided by Congress is potentially subverted.

At least one district court, faced with a strikingly similar motion for default judgment where information regarding damages under a Wage Withholding order was unknown, entered a default judgment in the full amount of the student loan pursuant to Federal Rules 55(b)(2) and 37(b)(2)(A)(vi).   *See Tex. Guaranteed Student Loan Corp. v. Gentle Touch Chiropractic Clinic, LLC*, No. 07-cv-1187, 2009 WL 2588757, at *2 (D. Colo. Aug. 19, 2009).   The Court finds this approach is warranted here.

Pursuant to Rule 37(b), where a party fails to comply with a discovery order, the Court has the authority to "[direct] that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims."   Fed. R. Civ. P.

37(b)(2)(A)(i).[2] Here, the Court has issued two Orders to Show Cause regarding Dhindsa's failure to respond to Plaintiff's discovery requests regarding O'Leary's wages. Dhindsa has ignored and failed to respond to each of these orders. Thus, the Court will deem established that O'Leary's garnishable wages equal the full amount of O'Leary's student loan balance. As explained above, Plaintiff is entitled to continue to garnish O'Leary's wages paid by Dhindsa until such time as the full amount of the indebtedness is paid or O'Leary's employment with Dhindsa concludes, whichever comes first. Dhindsa has provided no information that he has ceased to employ O'Leary. Through declaration, Plaintiff has adequately established the total amount of O'Leary's student loan debt that is outstanding and the subject of the Wage Withholding Order issued to Dhindsa. The Court, therefore, recommends that Plaintiff be awarded damages in the amount of $6,674.42[3] plus interest in the amount of $0.37 per day from November 30, 2010, to the date of judgment for Dhindsa's failure to comply with the Wage Withholding Order pursuant to Rule 55(b) and Rule 37(b).

### b.    Attorneys' Fees and Costs

Section 1095a(a)(6) of the HEA requires courts to award attorneys' fees and costs to a guaranty agency forced to bring suit to enforce a garnishment order. The guaranty agency, however, is only entitled to recover those expenses reasonably incurred by its attorneys in connection with work that was both necessary and useful in litigating its claims in court. *See Hensley v. Eckerhart*, 461 U.S. 424, 433 n.7 (1983) (reasonableness standards "are generally applicable in all cases in which Congress has authorized an award of fees to a 'prevailing party'").

Plaintiff requests that it be awarded its attorneys' fees and costs of suit pursuant to Section 1095a(a)(6) and has offered sufficient proof of the attorneys' fees and costs it expended in litigating this case. (Doc. 24, Exhibit B.) On December 1, 2010, Plaintiff attached updated attorney billing statements, which the Court has reviewed. These billing records establish that Plaintiff's request for

---

[2] The Court notes that a recommendation that default judgment be entered as a sanction for failure to comply with the Court's discovery order or respond to the Court's Orders to Show Cause would also be appropriate in this case. Fed. R. Civ. P. 37(b)(2)(A)(vi).

[3] Ms. Worrell set forth in her declaration that the amount owing on O'Leary's student loan debt that is the subject of the Wage Withholding Order consists of (1) $5,502.77 principal balance; (2) $393.99 in interest through November 30, 2010; and (3) $777.66 in collection costs. (Doc. 23, ¶ 8.)

attorneys' fees is reasonable, and the amount requested is adequately proven.  Thus, the Court recommends that Plaintiff be awarded a default judgment in the amount of $5,487.50 in costs and attorneys' fees.

## IV.  RECOMMENDATION

Based on consideration of the declarations, pleadings, and exhibits to the present motion, the Court RECOMMENDS as follows:

1.      Plaintiff's Motion for Default Judgment Be GRANTED;

2.      Plaintiff be awarded $6,674.42 in damages plus interest in the amount of $0.37 per day from November 30, 2010, to the date of judgment; and

3.      Plaintiff be awarded $5,487.50 in attorneys' fees and costs.

These findings and recommendations are submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 304.  Within twenty (20) days of service of this recommendation, any party may file written objections to these findings and recommendations with the Court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The district judge will review the magistrate judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C).  The parties are advised that failure to file objections within the specified time may waive the right to appeal the district judge's order.  *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

**Dated:    January 27, 2011**                         /s/ **Sheila K. Oberto**
                                                      UNITED STATES MAGISTRATE JUDGE